UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARNA NATASHA MOOLLA,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 13-CV-347-JPS

ORDER

---

  Plaintiff Marna Natasha Moolla brings this suit under 42 U.S.C. § 405(g) for judicial review of a final decision of the Social Security Administration ("SSA") denying her application for disability insurance benefits for lack of disability. (Docket #1); (Tr. 1-5); (Tr. 19-31).

  In particular, Plaintiff appeals from the adverse orders issued by: (i) Administrative Law Judge ("ALJ") Wayne L. Ritter on March 14, 2012 (Tr. 19-31); and (ii) the Appeals Council on January 28, 2013 (Tr. 1-5).

1. BACKGROUND

  1.1. General[1]

  Plaintiff, born in 1969, worked as a chiropractor for fifteen years until June 2009, when her treating physician opined that she was permanently disabled from performing the duties of that particular occupation due to a back injury. (Tr. 27 and 29).[2]

---

[1] To contextualize Plaintiff's arguments, this section comprises a brief overview of the ALJ's uncontested findings of fact regarding the Plaintiff's personal circumstances.

[2] Work as a chiropractor "is classified as medium work by the Dictionary of Occupational Titles" but Plaintiff's practice rose to the level of "'very heavy'" work. (Tr. 27).

In addition to providing care for her eight children with help from a nanny, Plaintiff cooked "complete homemade meals," shopped in stores "four times a week for one to two hours," and applied her "unlimited ability to concentrate" to managing her family's finances. *(Id.)*. Beyond these day-to-day tasks, Plaintiff engaged in an "active lifestyle, including long car trips, a trip to Australia, and other activities" notwithstanding her alleged physical and mental limitations. (Tr. 28).

    1.2    The ALJ's Residual Functional Capacity Assessment

Having determined that Plaintiff suffered from severe impairments of herniated discs and degenerative disc disease (Tr. 24), the ALJ ultimately found that Plaintiff:

> [H]as the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(A) except that she is limited to work involving only occasional overhead reaching with the left upper extremity; must be allowed to sit or stand at will, provided that she is not off task for more than 10% of the work day; and, secondary to pain and medication side effects, she is limited to work that involves only simple, routine, repetitive tasks.

(Tr. 26).

2.    PLAINTIFF'S STATEMENT OF ERRORS

In particular, Plaintiff alleges that the ALJ erred by: (i) finding that Plaintiff's mental health issues did not rise to the level of a severe impairment because that determination: (a) was not adequately substantiated; and (b) "glossed over more than 50 pages of medical evidence" favorable to Plaintiff (Docket #12, 5); (ii) assigning "little weight" to the March 2011 opinion of Dr. Trinh Truong, a treating physician (*Id.* at 13); (iii) assigning "little weight" to the opinions of Plaintiff's treating chiropractor, Dr. Karl Lickteig (*Id.* at 20-

23); and (iv) not specifying parameters for the sit/stand limitation in Plaintiff's residual functional capacity assessment (*Id.* at 23-24).

In addition, Plaintiff alleges that the Appeals Council erred by accepting Dr. Truong's May 2012 opinion into evidence and concomitantly denying Plaintiff's request for review of the ALJ's adverse decision without assigning any particular weight to the May 2012 opinion. (Docket #12, 14).

3. APPLICABLE LAW

    3.1    Standard of Review

The Commissioner's factual determinations are entitled to deference if they are supported by substantial evidence. 42 U.S.C. § 405(g); Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008). "Substantial evidence" exists so long as there is "more than a scintilla" of evidence, such that "a reasonable mind might accept [it] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Young v. Barnhart* 362 F.3d 995, 1001 (7th Cir. 2004).

The Court cannot "decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Powers v. Apfel*, 207 F.3d 431, 434–35 (7th Cir. 2000) (citing *Perales*, 402 U.S., at 399–40, *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the Commissioner." *Binion on Behalf of Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

"[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for [its] decision and confine our review to the reasons supplied by the ALJ." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th

Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). "That is why the ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to [the ALJ's] conclusion.'" *Steele*, 290 F.3d at 941 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). Therefore, "where the ALJ's decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.'" *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007) (quoting *Steele*, 290 F.3d at 940).

### 3.2 The SSA's Five-Step Sequential Evaluation Process

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. §§ 405(a) (Title II), 1383(d)(1) (Title XVI), the [SSA] has promulgated regulations establishing a five-step sequential evaluation process to determine disability. See 20 CFR § 404.1520 (2003) (governing claims for disability insurance benefits); § 416.920 (parallel regulation governing claims for Supplemental Security Income). If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to

consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

4.  ANALYSIS

    4.1   Plaintiff's Mental Health Issues

    At step two of the sequential evaluation process, the ALJ's decision analyzes Plaintiff's mental health issues in the following manner:

    The evidence also indicates that the claimant has been diagnosed with a mood disorder and an anxiety disorder and has been treated off and on for more than 10 years. However, the evidence does not reflect a history of functional limitations related to these impairments therefore the undersigned has assessed them as non-severe impairments. The claimant was prescribed medications to address her symptoms. The evidence reveals that the claimant's condition was controlled by routine outpatient treatment. She never required emergency treatment or hospitalization to address symptom exacerbation. The evidence does reflect discussions regarding the claimant feeling overwhelmed by all of the household responsibilities that she solely handled and by efforts to assist others. According to the treatment records, the claimant became overwhelmed after she took in her drug-abusing brother and by assisting neighbors by "doing everything that usually a family does." The evidence clearly indicates that the claimant's symptoms were related to situational stressors. Concerning the effectiveness of the prescribed medication, in January 2011, the claimant admitted that her mood was "under fairly good control" and she merely experienced "manageable ups and downs." The claimant's global assessment of functioning (GAF) score has ranged from 57-68, which reflects moderate to mild functional limitations (Exhibits 10F, 14F, 16F, 24F).

(Tr. 24-25).

Plaintiff attacks the ALJ's finding that her mental health issues were non-severe on grounds that it: (a) was not adequately substantiated; and (b) "glossed over more than 50 pages of medical evidence" favorable to Plaintiff. (Docket #12, 5). In support of her broad-brush criticisms, Plaintiff cites to a series of treatment notes (many of which are handwritten and either barely-legible or illegible) which she alleges show that her "symptoms and response to treatment waxed and waned throughout the relevant time period." (Docket #12, 5-9).

For example, Plaintiff portrays her mental health issues in 2010 in the following manner:

> In March 2010, Dr. Moolla complained of marked anxiety, nervousness, and restlessness. She occasionally felt short of breath due to anxiety. [Tr. 399]. Treatment with Lorazepam was not effective, but Clonazepam "helped." [Tr. 401]. By June 2010, she was having overwhelming anxiety with several panic attacks a day manifested by chest tightness, shortness of breath, and sweating. [Tr. 402].
>
> On November 1, 2010, Dr. Moolla sought treatment at Cornerstone Counseling due to the semi-retirement of her previous psychiatrist. She stated that she felt depressed every day and had no interest, enthusiasm, or motivation. She sometimes felt as if she were having a heart attack due to anxiety and excessive worry. Her cognition felt dulled and foggy. [Tr. 417]. Mental status examination showed mild psychomotor retardation, low-volume speech, and a flattened affect. [Tr. 418]. Dr. Moolla's mood and frustration tolerance improved over the next few months, and she felt her cognition was clearer. [Tr. 415-416].

(Docket #12, 7-8).

Unfortunately for Plaintiff, neither the evidence she cites from the year 2010 nor that covering the balance of the relevant time period impeaches the

ALJ's key finding that "[t]he evidence reveals that the claimant's condition was controlled by routine outpatient treatment." (Tr. 24); (Docket #12, 5-11).[3]

Moreover, having reviewed the portions of the record cited by the ALJ to support his conclusion (Exhibits 10F (Tr. 345-356), 14F (396-409), 16F (414-419), and 24F (485-493))—which collectively comprise all but fourteen of the pages Plaintiff alleges the ALJ "glossed over" (Docket #12, 5-6)—this Court finds that reasonable minds could conclude that Plaintiff's mental health issues were sufficiently mitigated by outpatient therapy and medication to permit basic work activities of the nature detailed in the ALJ's RFC assessment (i.e., modified sedentary work).[4]

4.2     March 2011 Opinion of Dr. Trihn Truong

On March 14, 2011, Dr. Trihn Truong, a treating physician, opined rather summarily that "[Plaintiff] will not be able to return to work." (Tr. 477). Notably, Dr. Truong did not expound upon "work" to identify whether he was referring to Plaintiff's work as a chiropractor or all work in general.

Upon consideration of Dr. Truong's March 2011 opinion, the ALJ assigned it "little weight" because: (i) "he fails to indicate how the claimant is functionally limited by her condition or establish a basis for his opinion that the claimant is unable to work"; and (ii) "Dr. Truong's own clinical observations as a whole suggest [Plaintiff] is physically functional for lower exertional level work." (Tr. 29).

---

[3]The Court remains mindful that it may not "…reweigh the evidence or substitute [its] judgment for that of the ALJ's." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

[4]The balance of the pages Plaintiff claims were "glossed over"—Tr. 441-454—thoroughly bolster the ALJ's mental health finding. *See, e.g.*, Tr. 451 (finding only mild functional limitations and no episodes of decompensation of extended duration).

Plaintiff argues that the ALJ erred because "[he] failed to consider any of the other factors necessary to properly weight [sic] a treating physician's opinion, such as the length of treatment, the doctor's specialty, and the opinion's consistency with the other evidence in the record" in accordance with 20 C.F.R. 404.1527(d) ("…opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.") (Docket #12, 13).

Unfortunately for Plaintiff, the regulatory subsection she cites—20 C.F.R. 404.1527(d)—explains that "opinions on issues reserved to the Commissioner" "are not medical opinions" for purposes of evaluating opinion evidence. Given that Plaintiff frames her argument *exclusively* in terms of Dr. Truong's statement that Plaintiff "'will not be able to return to work'" (Docket #12, 12-13), the Court is obliged to find that the ALJ committed no error in his treatment thereof.[5]

### 4.3    Opinions of Dr. Karl Lickteig

In his decision, the ALJ addressed limitations prescribed by Dr. Karl Lickteig, a chiropractor who treated Plaintiff, as follows:

> Dr. Karl Lickteig, the claimant's treating chiropractor completed a physical capacities assessment indicating that in an 8-hour period the claimant can sit, stand, and walk for only one hour, is unable to use her hands to push and pull, can only occasionally lift and carry up to 10 pounds, only occasionally

---

[5]Plaintiff does not appear to frame the balance of the notations in Dr. Truong's March 2011 assessment as medical opinions. (Docket #12, 12-13); *See* (Tr. 477). Even if Plaintiff seeks to construe those observations as medical opinions, the Court finds no error in an assignment of little weight thereto because the ALJ "minimally articulated" his reasons for discounting the observations (a deferential standard the Seventh Circuit has deemed "lax"). *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citations omitted).

> bend, but never squat, crawl, climb, or reach overhead (Exhibit 22F). The undersigned has fully considered the opinion of Dr. Lickteig and assigns it little weight as he is not a medically acceptable treating source. In addition, Dr. Lickteig's assessment of the claimant's condition is inconsistent with the evidence of record. For example, he reports that the claimant has experienced motor and sensory loss, which is in direct contradiction to the multiple physical examinations of Dr. Truong that revealed 5/5 strength and no atrophy (Exhibits 22F, 25F.)

(Tr. 28-29).

Plaintiff contends that the ALJ "…erred because he did not properly evaluate Dr. Lickteig's opinion as an opinion from an 'other source' pursuant to SSR 06-03p." (Docket #12, 21). In particular, Plaintiff complains that the ALJ's assessment of Dr. Lickteig's opinion considered no factors other than consistency with medical evidence from acceptable medical sources. (Docket #12, 22).

Plaintiff misreads SSR 06-03p. That Social Security Ruling provides, in relevant part, that:

> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR2006-03-di-01.html (Last visited January 15, 2014).[6] Therefore, contrary to Plaintiff's view, by discounting Dr. Lickteig's limitations on grounds of inconsistency with the evidence of record, the ALJ committed no error *per se* under SSR 06-03p.

---

[6] A chiropractor is a medical source who is not an "acceptable medical source" for purposes of the regulatory heuristic. 20 U.S.C. § 404.1513(d)(1).

Moreover, elsewhere in the ALJ's opinion, he assigns great weight to "State Agency physician, Dr. Mina Khorshidi [who] completed a physical residual functional capacity assessment indicating that the claimant is capable of work at the sedentary exertional level with manipulative restrictions (Exhibit 19F)." (Tr. 28).

Against this backdrop, this Court finds that the ALJ's discussion of Dr. Lickteig's opinion does not violate the strictures of SSR 06-03p. *See generally*, *Elder v. Astrue*, 529 F.3d at 415 (cited *supra* at n.4).[7]

---

[7] In addition, Plaintiff complains that the ALJ failed to explicitly mention a subsequent physical capacity evaluation from Dr. Lickteig, dated December 23, 2011, "limiting [Plaintiff] to sitting 1-2 hours, standing 2 hours and walking two hours" in addition to requiring a change in position "every 15 to 20 minutes." (Docket #12, 21).

Given that the December 2011 assessment is slightly less restrictive than the April 2011 assessment in regards of sitting, standing and walking limitations, the Court is obliged to concur with the government's argument that "[t]he ALJ's rationale for discounting chiropractor Lickteig's April opinion—based on the fact that chiropractor Lickteig was not an acceptable medical source and his opinion was inconsistent with Dr. Truong's physical examinations and Dr. Khorshidi's assessment—applies with equal force to the December opinion." (Docket #13, 20).

To be fair, the December 2011 assessment provided a *more* restrictive change-of-position limitation (every 15-20 minutes, rather than every 30 minutes). (Docket #12, 20-21). However, the ALJ was ultimately even more conservative in his residual functional capacity assessment in this regard, providing for an "at will" sit-stand limitation. (Tr. 26).

Against this backdrop, this Court finds no error in the ALJ's failure to explicitly mention Dr. Lickteig's December 2011 assessment in his discussion. *See generally*, *Getch v. Astrue*, 539 F3d 473, 480 (7th Cir. 2008) ("The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).")

### 4.4 Parameters for Sit/Stand Limitation in RFC Assessment

The ALJ's assessment of Plaintiff's residual functional capacity provides, *inter alia*, that she "must be allowed to sit or stand at will, provided that she is not off task for more than 10% of the work day" in the course of performing sedentary work. (Tr. 26). Plaintiff argues that the ALJ's "at will" qualification fails to meet the specificity requirement set forth in SSR 96-9p. http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-09-di-01.html (Last visited January 15, 2014) (providing, in relevant part, that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.").

Alas, the Seventh Circuit has found that qualifying a sit/stand limitation with "as needed" is sufficiently specific, so this Court is obliged to find that a qualification of "at will" is sufficiently specific as well given that it is functionally equivalent to the phrase "as needed." *Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008); *see also, Arnett v. Astrue*, 676 F.3d 586, 593-594 (7th Cir. 2012) (citing *Ketelboerter* for this proposition).

### 4.5 May 2012 Opinion of Dr. Truong

Lastly, Plaintiff argues that the Appeals Council erred by accepting Dr. Truong's May 2012 opinion into evidence and concomitantly denying Plaintiff's request for review of the ALJ's adverse decision without assigning any particular weight to the May 2012 opinion. (Docket #12, 14).

Dr. Truong's May 2012 opinion, in full, reads as follows:

> I have been treating Dr. Marna Moolla since June 14, 2010. She had been deemed totally disabled the year prior by orthopedist Dr. Dale Bauwens. She has seen me on a monthly basis since June of 2010. She has undergone multiple epidural injections, costovertebral injections and facet injections. She is on a scheduled dose of Oxycontin 80 mg 3 times per day and takes

> 1-2 Oxycodone instant release 15 mg tablets as needed up to 4 times per day.
>
> She cannot perform even sedentary work for the following reasons. She cannot sit for more than 30 minutes. She cannot stand for more than 30 minutes. She must lay down for a period of 20 minutes or more every 4 hours. She cannot lift more than 10 pounds hourly. She cannot perform repetitive tasks that require turning at the waist multiple times per hour.
>
> Please feel free to contact me if you have questions.
>
> Sincerely,
> s/ Trinh G. Truong, M.D.

(Tr. 521).

Notwithstanding the fact that Dr. Truong's May 2012 opinion was rendered *nearly two months after* the ALJ's decision (which issued on March 14, 2012), the Appeals Council made the May 2012 opinion part of the record for purposes of evaluating Plaintiff's request for review of the ALJ's decision. (Tr. 4 and 5).

On January 28, 2013, the Appeals Council denied Plaintiff's request for review, reasoning as follows:

> [W]e considered the reasons you disagree with the [ALJ's] decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 1-2).

In *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012), the Seventh Circuit confronted this same murky formulation from the Appeals Council:

> The Social Security Administration regulations require [the Appeals Council] to evaluate "new and material evidence" in determining whether a case qualifies for review. 20 C.F.R.

> §§ 404.970(b), 416.1470. In *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997), we held that "[o]ur review of the question whether the [Appeals] Council made an error of law in applying this regulation is de novo.... In the absence of any such error, however, the Council's decision whether to review is discretionary and unreviewable." Id. at 1294. Here, the Appeals Council's decision says that it "considered…the additional evidence…[and] found that this information does not provide a basis for changing the Administrative Law Judge's decision."
>
> We note that this text, which often appears in orders of the Appeals Council rejecting plenary review, is not as clear as it might be. On the one hand, it might indicate that the Appeals Council found the proffered new evidence to be immaterial, but on the other hand it might indicate that the Council accepted the evidence as material but found it insufficient to require a different result.

After surveying various case law, the Seventh Circuit interpreted the Appeals Council's murky language "as stating that it has rejected [the claimant's] new evidence as non-qualifying under the regulation" (which, under *Perkins*, gives rise to de novo review). *Farrell*, 692 F.3d at 771. In other words, *Farrell* holds that the Appeals Council's murky language impliedly deems the evidence proffered to be any of: (i) not new; (ii) not material; or (iii) not new and not material.

Here, as in *Farrell*, it appears to be undisputed that the proffered opinion "…was 'new' to the administrative record at the time of [the claimant's] application to the Appeals Council." 692 F.3d at 771. However, the plain language of Dr. Truong's May 2012 opinion *contemporaneously* (i.e., as of May 5, 2012) assesses Plaintiff's physical limitations and so this Court is unable to find that the opinion "relates to the period on or before the date of the administrative law judge hearing decision" as § 404.970(b) requires.

Page 13 of 14

Case 2:13-cv-00347-JPS   Filed 01/22/14   Page 13 of 14   Document 17

This basis alone is sufficient for this Court to find no legal error by the Appeals Council. But even if Dr. Truong's May 2012 opinion is read generously (i.e., not literally) to be opining on Plaintiff's physical limitations on or before March 14, 2012 (the date of the ALJ's hearing decision), this Court is unable to conclude that Dr. Truong's May 2012 opinion is material because it fails entirely to respond to the ALJ's primary criticism of Dr. Truong's March 2011 opinion: "Dr. Truong's own clinical observations as a whole suggest [Plaintiff] is physically functional for lower exertional level work." (Tr. 29).

With the benefit of the foregoing analysis, this Court is obliged to conclude that the Appeals Council did not commit legal error in rejecting Dr. Truong's May 2012 opinion as non-qualifying under 20 C.F.R. § 404.970(b).

5. CONCLUSION

With the benefit of the foregoing analysis, the Court is obliged to affirm the ALJ's decision (which, by virtue of the Appeals Council denying review thereof, stood as the final decision of the Commissioner of Social Security). Accordingly,

IT IS ORDERED that Administrative Law Judge Wayne L. Ritter's decision be and the same is hereby AFFIRMED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of January, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge